# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

---

|  |  |
|---|---|
| In Re | |
| | |
| ROBERT SCOTT BISHOP | **Bankruptcy Case** |
| and TERESA ANN BISHOP, | **No. 07-41068-JDP** |
| | |
| **Debtors.** | |

---

|  |  |
|---|---|
| BMC WEST CORPORATION, | |
| a Delaware corporation, | |
| authorized to do business | |
| in the State of Idaho, | |
| | |
| **Plaintiff,** | |
| **vs.** | **Adv. Proceeding No. 08-8020** |
| | |
| ROBERT SCOTT BISHOP, | |
| dba R.S.B. Const., and | |
| TERESA ANN BISHOP, | |
| | |
| **Defendants.** | |

---

## MEMORANDUM OF DECISION

---

**Appearances:**

William H. Mulberry, Ririe, Idaho, Attorney for Plaintiff.

Robert J. Maynes, Idaho Falls, Idaho, Attorney for Defendants.

MEMORANDUM OF DECISION - 1

*Introduction*

This is a dischargeability action commenced against Defendants

Robert Scott Bishop, d/b/a R.S.B. Construction, and Teresa Ann Bishop[1],

chapter 11[2] debtors by a creditor, Plaintiff BMC West Corporation

("Plaintiff").  Docket No. 7.[3]  Defendants filed a motion to dismiss the

action.  The motion was briefed, Docket Nos. 9 and 10, and the Court

conducted a hearing concerning the motion on May 13, 2008 at which

counsel for the parties appeared and argued their positions.  Having

considered the record, the submissions of the parties, the arguments of

counsel, as well as the applicable law, this Memorandum resolves the

issues raised by the motion.  Fed. R. Bankr. P. 7052; 9014.

[1] The term "Defendants," when used herein, refers to all defendants in this adversary proceeding, including R.S.B. Construction.  The individual defendants will be referred to by name.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9037.

[3] In this Memorandum, pleadings filed in the adversary proceeding docket are denoted as "Docket No."  Those pleadings docketed in the underlying 11 bankruptcy case, No. 07-41068-JDP, are referred to as "BK Docket No."

MEMORANDUM OF DECISION - 2

### *Relevant Facts and Procedural History*

According to Plaintiff's complaint[4], Defendants Scott and Teresa

Bishop are the officers of RSB Construction Company, an Idaho

corporation; they own all of the stock of that company.  Docket No. 1,

¶¶ 1-2.  Scott and Teresa Bishop also own 100% of RSB Land LLC ("RSB

Land"), an Idaho Limited Liability Company.[5]

Plaintiff alleges that RSB Construction was a good, reliable customer

of Plaintiff for many years.  Docket No. 1 at ¶ 1.  Between January 2, 2007

and June 28, 2007, RSB Construction purchased building materials from

Plaintiff and used those materials to construct a home at 5112 Shadow

Creek in Idaho Falls, Idaho ("Shadow Creek home").  *Id.*   However, when

---

[4] As it must for purposes of disposing of this motion, the Court accepts as true all allegations stated in Plaintiff's complaint.  *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200 (2007).

[5] Schedule B filed by Scott and Teresa Bishop in their bankruptcy case confirms these ownership interests.  While  Schedule B refers to RSB Construction, Inc., it appears to be the same business entity referred to in Plaintiff's complaint as RSB Construction Co.  BK Docket No. 19.

MEMORANDUM OF DECISION - 3

RSB Construction failed to pay for the building materials, Plaintiff timely

recorded a materialman's lien on the Shadow Creek home on August 2,

2007.  Docket No. 1 at ¶ 2; Ex. 5.

In order to close a sale of the Shadow Creek home, Defendants

needed Plaintiff's lien to be released.  *Id.* at ¶ 3.  To accomplish this,

Defendant Scott Bishop allegedly approached the credit manager and

general manager of Plaintiff, and proposed that if Plaintiff would release

its lien on the Shadow Creek home, in exchange, Bishops would grant

Plaintiff a second-priority mortgage on four unimproved building lots

owned by RSB Land.  *Id*.  Scott Bishop represented that the four lots were

encumbered solely by a deed of trust held by the Bank of Commerce,

securing an indebtedness of approximately $45,000.  *Id.*  Plaintiff's

representatives, familiar with land values in the area, believed that the lots

were valued in excess of the $45,000 owed on the Bank of Commerce deed

of trust plus the $54,965 owed to Plaintiff.  Therefore, they believed that a

second mortgage on the lots would place Plaintiff in a fully secured

position.  *Id.* at ¶ 4.

MEMORANDUM OF DECISION - 4

In response to Scott Bishop's offer, Plaintiff directed its attorney, Justin R. Seamons, to check the status of the title to the four lots. Docket No. 1 at ¶ 5. In turn, Seamons ordered and obtained a lot book report concerning the lots from Idaho Title and Trust. *Id.*; Ex. 6. The report confirmed Bishop's representations about the status of title. It noted the existence on the record of the deed of trust held by the Bank of Commerce, some unpaid real property taxes, and nothing more. Based upon this inquiry, Plaintiff agreed to Bishop's proposal, and released the lien in exchange for what it understood to be a second-priority mortgage on the four lots. *Id.* at ¶ 5; Ex. 6.

On August 9, 2007, Robert S. Bishop and Teresa A. Bishop as individuals, and RSB Land LLC, acting through Robert S. Bishop and Teresa A. Bishop as Members/Managers, and RSB Construction, acting through Robert S. Bishop and Teresa A. Bishop as President and Secretary, executed a promissory note ("Note") payable to Plaintiff in the amount of $54,964, due on demand. Docket No. 1 at ¶ 6; Ex. 7. In addition, at the same time, RSB Land, acting through Robert S. Bishop and Teresa A.

MEMORANDUM OF DECISION - 5

Bishop as its President and Secretary, as Grantor, executed and delivered a mortgage on the four lots to secure the Note, naming Plaintiff as Grantee. Ex. 8.  The mortgage contained an express covenant by the Grantor representing it had good and marketable title to the lots, and that the lots were "free from any and all mortgages, liens, security interests, or other encumbrances, except for this mortgage and [the Bank of Commerce] deed of trust . . . ."  Docket No. 1; Ex. 8 at ¶ 8.  The mortgage was recorded on August 9, 2007.  Docket No. 1; Ex. 8.

After receipt of the Note and mortgage from Defendants,  Plaintiff released its materialman's lien on the Shadow Creek home.  Docket No. 1 at ¶ 9; Ex. 9.

On December 19, 2007, Scott and Teresa Bishop filed a voluntary chapter 11 petition.  BK Docket No. 1.  On Schedule F, they listed Plaintiff as a creditor holding an unsecured, nonpriority claim in the amount of $54,964.80.  BK Docket No. 19.

On approximately February 25, 2008, Plaintiff's representatives first learned that Cambridge Development, Inc., another creditor of RSB Land,

MEMORANDUM OF DECISION - 6

held a first-priority deed of trust on the four lots, securing a debt for

$454,546. Docket No. 1 at ¶ 10. The Cambridge Development deed of

trust had apparently been executed by RSB Land on August 19, 2005, and

recorded on August 24, 2005. *Id*.; Ex. 10. Plaintiff's agents later discovered

that the lot book report its attorney had received from Idaho Land and

Title was inaccurate, and that the representations allegedly made to

Plaintiff by Defendants about the status of their title to the four lots were

false. Docket No. 1 at ¶ 10.

On March 17, 2008, Plaintiff filed the complaint commencing this

adversary proceeding. Docket No. 1. Plaintiff's first claim for relief alleges

that Defendant Scott Bishop knowingly made a false statement when he

represented to Plaintiff that the only encumbrance on the four lots was the

Bank of Commerce deed of trust, and that Defendants perpetuated this

false statement via the mortgage covenant. Docket No. 1 at ¶ 11. Plaintiff

alleges that it justifiably relied upon these false statements, and released its

first-position statutory lien on the Shadow Creek home and accepted

substitute collateral (*i.e.*, the four lots) which was effectively valueless. *Id*.

MEMORANDUM OF DECISION - 7

Plaintiff therefore alleges that its claim against Defendants represents a debt based upon false pretenses, false representations, and/or actual fraud; it asks that the debt be excepted from discharge in Scott and Teresa's bankruptcy case pursuant to § 523(a)(2)(A). *Id.* at ¶¶ 12-13.

In Count Two of the complaint, Plaintiff alleges that Defendants' fraud, which caused Plaintiff to lose its secured position via release of the materialman's lien, constitutes a willful and malicious injury, and therefore, its claim against them is also excepted from discharge under § 523(a)(6). Docket No. 1 at ¶¶ 15-17.

Defendants' motion to dismiss was filed on April 15, 2008. Docket No. 7. In it, Defendants argue that Plaintiff's complaint fails to state a claim against them upon which any relief may be granted, and that it should be dismissed.

//

//

//

MEMORANDUM OF DECISION - 8

*Analysis and Disposition*

A.  Legal Standard on Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under Fed.

R. Civ. P. 12, as incorporated by Rule 7012, Plaintiff must allege "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

*Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007); *Clemens v.*

*DaimlerChrysler Corp.*, ___ F.3d ___, 2008 WL 2446317 *2 (9th Cir. June 19,

2008).  When ruling on a motion to dismiss for failure to state a claim, the

court must accept as true all of the factual allegations contained in the

complaint.  *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200 (2007);

*Idaho v. McClung (In re McClung*), 04.1 I.B.C.R. 11, 12 (Bankr. D. Idaho

2004).

B.  Fraud under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge a debt which is obtained

through "false pretenses, a false representation, or actual fraud, other than

a statement respecting the debtor's or an insider's financial condition".

This Court has held that:

MEMORANDUM OF DECISION - 9

> To invoke the protections of this provision, a
> creditor must prove, by preponderance of the
> evidence, *see Grogan v. Garner*, 498 U.S. 279, 291
> (1991), that: (1) Defendant made representations;
> (2) which at the time Defendant knew were false;
> (3) Defendant made the representations with the
> intention of deceiving Plaintiff; (4) Plaintiff relied
> on such representations, and; (5) Plaintiff
> sustained the alleged loss as the proximate result
> of the representations.

*Wells Fargo Bank Northwest, N.A. v. Covino (In re Covino)*, 04.3 I.B.C.R. 98,

103-04 (Bankr. D. Idaho 2004) (citing *Bell v. Smith (In re Smith)*, 98.4 I.B.C.R.

119, 120 (Bankr. D. Idaho 1998) (citing *American Express v. Hashemi (In re*

*Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996).

Taking as true all of the factual allegations contained in the

complaint, the Court concludes that the first three elements of Plaintiff's

fraud claim have been met.  However, Plaintiff's claim for relief under

§ 523(a)(2)(A) is deficient with respect to the fourth and fifth elements.

Assuming Plaintiff can prove the allegations of the Complaint at

trial, the Court agrees that Plaintiff will have shown that Defendants made

false representations regarding the status of the encumbrances upon the

MEMORANDUM OF DECISION - 10

four lots, specifically that there was only one prior mortgage on the lots,

that held by the Bank of Commerce.[6]  In addition, Plaintiffs will be able to

show that Defendants knew about the Cambridge Development, Inc. deed

of trust, because Defendants had executed and granted it to that creditor

prior to executing the Bank of Commerce deed of trust, prior to

persuading Plaintiff to release its lien.  Ex. 10.  These facts would therefore

satisfy the first two elements for relief under § 523(a)(2)(A).

The third element, that Defendants intended to deceive Plaintiff, is a

question of fact which may be inferred from the circumstances

surrounding the case.  *Idaho v. Edwards (In re Edwards)*, 99.2 I.B.C.R. 41, 48

(Bankr. D. Idaho 1999); *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015,

1018 (9th Cir. 1997).  Plaintiff's complaint alleges that Defendants were

"desperate" to have the materialman's lien removed from the Shadow

Creek home so they could sell it.  Docket No. 1 at ¶ 3.  It also alleges that

---

[6] It is of no moment here that Defendants include both principals of a
business entity, as well as the business itself.  Under § 523, the principals of a
corporation will be held responsible for fraud and intentional torts committed as
individuals, and may not seek protection from their misdeeds behind a corporate
shield.  *Bell v. Smith (In re Smith)*, 98.4 I.B.C.R. 119, 120 (Bankr. D. Idaho 1998).

MEMORANDUM OF DECISION - 11

Defendants did not disclose the existence of the first position lien, and in

fact specifically represented to Plaintiff that there were no other liens on

the property.  If these facts are proven, the Court could then infer from the

circumstances of the case that Defendants, in making their false statements

to Plaintiff, intended to deceive Plaintiff.

To satisfy the fourth element for relief, Plaintiff must prove it relied

upon Defendants' alleged false representations.  The reliance mandated by

§ 523(a)(2)(A) is justifiable, not reasonable, reliance.  *Field v. Mans*, 516 U.S.

59, 70-71 (1995).  As the Supreme Court explained:

> justifiable reliance is the standard applicable to a
> victim's conduct in cases of alleged
> misrepresentation and that "it is only where,
> under the circumstances, the facts should be
> apparent to one of his knowledge and intelligence
> from a cursory glance, or he has discovered
> something which should serve as a warning that
> he is being deceived, that he is required to make
> an investigation of his own."

*Id.* at 71 (quoting W. Prosser, Law of Torts § 108, p. 718 (4th ed. 1971)).

"Justifiable reliance is a subjective standard in which the knowledge of the

plaintiff and the relationship between the parties is considered."  *Covino*,

MEMORANDUM OF DECISION - 12

04.3 I.B.C.R. at 104; *Eugene Parks Law Corp. Defined Benefit Pension Plan v.*

*Kirsh (In re Kirsh)*, 973 F.2d 1454, 1461 (9th Cir. 1992).

Here, Plaintiff was a sophisticated creditor dealing with debtors it

understood were experiencing financial difficulties.  Not only had

Defendants failed to make timely payment on Plaintiff's account,

something different than had been the case historically, Plaintiff's agents

felt it necessary to perfect a materialman's lien on the Shadow Creek

home.  Plaintiff's agents also were aware that Defendants were

"desperate" to have the materialman's lien removed in order to sell the

home.  Under the circumstances, it is doubtful Plaintiff would have been

justified in relying upon Defendants' representations absent some

investigation.  *See Kirsh*, 973 F.2d at 1461.

Here, however, Plaintiff wisely sought to verify that Defendants'

representations were truthful and accurate.  The complaint is clear on this

point:  "Plaintiff directed its attorney, Justin R. Seamons, to check Robert

Bishop's representation as to the state of title to the said four (4) lots."

Docket No. 1 at ¶ 5.  In other words, as this allegation shows, Plaintiff was

MEMORANDUM OF DECISION - 13

unwilling to simply rely upon Defendants' representations as given, and instead sought independent advice and information by engaging an attorney, and instructing him to investigate the status of the title to the lots. Then, only after it considered the advice of its attorney, who in turn relied upon the lot book report, did Plaintiff release its materialman's lien and accept the Note and mortgage on the four lots offered by Defendants.

Under these circumstances, it is clear that Plaintiff did not rely on Defendants' representations. Instead, Plaintiff relied on its attorney's advice, and the information obtained from the title company. As a result, assuming the facts alleged in the complaint are correct, Plaintiff will be unable to plausibly show that it justifiably relied upon Defendants' alleged misrepresentations in releasing its lien.

Plaintiff contends that, under the case law, it need not prove reliance, but instead is protected by a "presumption of reliance." *See Apte v. Japra (In re Apte)*, 96 F.3d 1319 (9th Cir. 1996). The Court disagrees. *Apte* instructs that "the nondisclosure of a material fact in the face of a duty to disclose [establishes] the requisite reliance and causation for actual fraud

MEMORANDUM OF DECISION - 14

under the Bankruptcy Code." *Id*. at 1323. To support this decision, *Apte*

cites *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972).

However, the Ninth Circuit has limited the holding of *Affiliated Ute* to facts

that "primarily allege omissions" rather than misrepresentations. *Binder v.*

*Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999) ("We agree . . . that the

*Affiliated Ute* presumption should not be applied to cases that allege both

misstatements and omissions unless the case can be characterized as one

that primarily alleges omissions."). Here, Plaintiff has not alleged that

Defendants omitted information about the Cambridge lien on the four lots,

but rather that they plainly misrepresented, both verbally and in writing,

that there were no other liens on the property. Thus, the presumption of

reliance announced in *Affiliated Ute* and applied in *Apte* does not benefit

Plaintiff.

      Plaintiff likewise cannot prove the fifth element required to establish

an exception to discharge under § 523(a)(2)(A), that Plaintiff sustained a

loss as the proximate result of Defendants' representations. The facts

before the Court prove that Plaintiff indeed sustained a loss: it gave up a

MEMORANDUM OF DECISION - 15

priority materialman's lien on the Shadow Creek house in favor of a third-

position mortgage on the four lots, allegedly a valueless lien.  However,

Defendants' misrepresentations about the lots' title were not the proximate

cause of Plaintiff's loss.  Rather, it clearly appears from the complaint that

the faulty lot book report, which Plaintiff's attorney sought in order to

check the truth of Defendants' representations as to the status of title on

the four lots, was the proximate cause of Plaintiff's loss.  Of course, had the

lot book report correctly showed the Cambridge Development lien, in

spite of Defendants' representations, Plaintiff would never have released

its materialman's lien.  Docket No. 1 at ¶ 12.  The facts as alleged show that

Plaintiff did not merely accept Defendants' representations as true.

Rather, it first investigated the representations, and thereafter made a

decision based upon that flawed inquiry.  It was the inaccurate title report

that proximately caused Plaintiff's loss.

Plaintiff's complaint fails to allege facts to support a plausible claim

under § 523(a)(2)(A).  Defendants' motion to dismiss this claim will

therefore be granted.

MEMORANDUM OF DECISION - 16

C.  Willful and Malicious Injury under § 523(a)(6)

Section 523(a)(6) excepts from discharge those debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity".  To show willfulness, the United States Supreme Court has interpreted this discharge exception to require more than a deliberate or intentional *act* by a debtor which causes injury to the creditor.  Instead, the creditor must prove that the debtor inflicted a deliberate or intentional *injury* to prevail under this provision.  *Valley Tissue Culture, Inc. v. Steed (In re Steed)*, 01.4 I.B.C.R. 150, 152 (Bankr. D. Idaho 2001); (citing *Kawaahau v. Geiger*, 523 U.S. 57, 61 (1998)).  "This intent element 'requires the actor either to desire the consequences of an act or to know the consequences are substantially certain to result.'" *Id.* at 152 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001)).

Maliciousness is a separate inquiry, which requires that the injury must "be a wrongful act, done intentionally, which necessarily causes injury, and which is done without just cause or excuse." *In re Thiara*, 285 B.R. 420, 427 (9th Cir. BAP 2002) (citing *Petralia v. Jercich*, 238 F.3d at 1208).

MEMORANDUM OF DECISION - 17

Plaintiff must prove Defendants' intent to injure, as well as maliciousness, by a preponderance of the evidence. *Branam v. Crowder (In re Branam)*, 226 B.R. 45, 52 (9th Cir. BAP 1998); *Spokane Ry. Credit Union v. Endicott (In re Endicott)*, 254 B.R. 471, 475 n. 5 (Bankr. D. Idaho 2000). And in examining a debtor's conduct, the Court must be mindful that exceptions to discharge are strictly construed against the objecting creditor and in favor of the debtor. *Endicott*, 254 B.R. at 475 n. 5 (citing *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992)).

While federal law determines the nondischargeability of a debt, state law governs the elements of the underlying tort, in this case, fraud. *Del Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999). Under Idaho law, there are nine elements which must be proven in order to support a claim of fraud: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Partout v. Harper*, 183 P.3d 771, 776 (Idaho 2008) (citing

MEMORANDUM OF DECISION - 18

*Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 615, 114 P.3d 974, 985 (2005)

(citing *Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002)).

To prove intentional fraud, Idaho case law requires proof that

Plaintiff justifiably relied upon Defendants' statements. As discussed

above, Plaintiff's allegation of justifiable reliance is not plausible on its

face, even under a preponderance of the evidence standard. Accordingly,

Plaintiff's nondischargeability claim under §523(a)(6) also fails.[7]

//

//

//

//

//

//

---

[7] Given this outcome, the Court expresses no opinion concerning
Defendants' remaining arguments in favor of dismissal.

MEMORANDUM OF DECISION - 19

## *Conclusion*

The allegations of Plaintiff's complaint fail to state a claim against Defendants upon which relief may be granted.  Defendants' motion to dismiss will therefore be granted by separate order, and this action will be dismissed with prejudice.[8]

Dated:  July 2, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

_____

[8] It perhaps represents poor policy that, assuming the facts alleged in the complaint are true, the Code absolves Defendants of any responsibility for their misrepresentations simply because Plaintiff was wary, and attempted to be diligent, in its approach to making this deal.  However, Congress has established the requisite elements for excepting debt from discharge under §§ 523(a)(2)(A) and (a)(6), and while it was surely unforeseen and unfortunate that Plaintiff's attorney would advise Plaintiff to proceed based upon the erroneous information in the title report, the Court is powerless to grant Plaintiff relief.  *See Maney v. Kagenveama (In re Kagenveama)*, ___ F.3d ___, 2008 WL 2485570 (9th Cir. 2008) ("[i]f the [provisions of the Bankruptcy Code] arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute.") (*citing Lamie v. United States Tr.*, 540 U.S. 526, 542 (2004)).

MEMORANDUM OF DECISION - 20